# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALYCE LILLEY,

       Plaintiff,

v.

       Case No. 13-CV-441-JPS

WAUKESHA COUNTY,

       ORDER

       Defendant.

1. BACKGROUND

Plaintiff Alyce Lilley ("Lilley") brings claims of racial discrimination and retaliation against her employer, Waukesha County (located in the State of Wisconsin), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). (Docket #6).

In particular, Lilley claims that Kathleen Madden ("Madden"), the Clerk of Circuit Court in the Waukesha County Court System ("WCCS"), failed to promote her in 2011 to the position of Civil Division Manager because: (i) Lilley is African-American (Docket #6, ¶¶ 13, 72 and 90); and (ii) Lilley filed charges of racial discrimination and retaliation against WCCS in 2006 and 2007 with the State of Wisconsin's Division of Equal Rights ("ERD") (cross-filing the same with the U.S. Equal Employment Opportunity Commission ("EEOC")) and participated in the EEOC's investigation of her 2007 charges, *see* (*Id.* at ¶¶ 40-46 and 79-81). (*Id.* at ¶¶ 59, 72, 83, 90, and 95).[1]

---

[1] In accordance with the parties' stipulation (Docket #22), the Court dismissed the balance of the claims set forth in Lilley's amended complaint (Docket #6). (Docket #32).

Waukesha County moves for summary judgment on all of Lilley's claims. (Docket #24).

2. FACTS

2.1 Lilley's Career Path at WCCS

In July of 1998, Lilley was hired as a "Deputy Clerk Supervisor" in the Clerk of Courts' Criminal/Traffic Division. (Docket #44, ¶ 4). Approximately seven years later, this position – while remaining within the Clerk of Courts' Criminal/Traffic Division – was re-titled "Circuit Court Supervisor." (Docket #44, ¶ 5).

On February 18, 2014, Waukesha County "promoted" Lilley to the position of "Circuit Court Coordinator." (Docket #35, p.4, n.1).

At all times relevant to this case, Lilley was the only African-American supervisor or manager working in WCCS. (Docket #49, ¶ 1).

2.2 2006 and 2007: ERD and EEOC Charges

In 2006, Lilley was denied a promotion to the position of "Chief Deputy Clerk" in the Clerk of Courts' Criminal/Traffic Division. (Docket #49, ¶ 14). A white applicant was chosen instead. (*Id.*).[2]

On or about May 9, 2006, Lilley filed charges of racial discrimination and retaliation against Waukesha County with the ERD (Case No. CR200601512) and EEOC (Case No. 26GA601051). (Docket #44, ¶ 122). Lilley's ERD complaint was withdrawn on July 9, 2007. (*Id.*). Then, on August 8, 2007, the EEOC issued a Dismissal and Notice of Rights. (*Id.*)

---

[2]The facts in this paragraph are recounted solely for purposes of contextualizing Lilley's claims that her 2011 promotion denial was retaliation for her 2006 ERD and EEOC charges. *See* n.1, *supra*.

In 2007, Lilley applied to transfer laterally into the Civil Division. (Docket #49, ¶ 21). Her request was denied. (*Id.* at ¶ 22). A white applicant was chosen instead. (*Id.* at ¶ 5b).[3]

Later in 2007, Lilley filed a second round of complaints—again charging racial discrimination and retaliation against Waukesha County—with the ERD and EEOC. (Docket #44, ¶ 123). Lilley eventually stopped pursuing recourse through the ERD and, on September 27, 2012, the EEOC issued a determination finding probable cause of discrimination and retaliation. On January 22, 2013, the EEOC issued a Notice of Right to Sue (Case No. 26C200701298). (*Id.*).

### 2.3   2011 Promotion Denial

On or about May 2, 2011, Madden posted a job opening for the position of Civil Division Manager. (Docket #44, ¶ 35). The following day, Lilley applied for the position. (*Id.* at ¶ 38).

On July 26, 2011, Madden advised Lilley that Madden would not consider Lilley for the Civil Division Manager position because of: (i) Lilley's "clear lack of initiative to prepare herself for promotional opportunities" outside of the Criminal/Traffic Division; and (ii) Lilley's "several ongoing performance issues and personnel concerns" which included: (a) sending "inappropriate" e-mails on September 24, 2010, and June 29, 2011; (b) failing to complete subordinates' annual performance evaluations in a

---

[3]The facts in this paragraph are recounted solely for purposes of contextualizing Lilley's claims that her 2011 promotion denial was retaliation for her 2007 ERD and EEOC charges. *See* n.1, *supra*.

timely manner; and (c) doing homework "on County time and on County equipment." (Docket #28, ¶¶ 21-28); (Docket #44, pp. 26-27).[4]

The Civil Division Manager position was re-posted "on August 15, 2011, as a Chief Deputy Clerk, with a possibility of under-filling the position at the newly-created Circuit Court Coordinator level." (Docket #44, ¶ 76).[5] Approximately two days later, Lilley submitted an application and resume for the re-posted position. (Docket #44, ¶ 80).

Although "aware that Ms. Lilley re-submitted an application on or about August 17, 2011," Madden declined to reconsider Lilley's candidacy because Madden "did not note any notable improvement in Lilley's performance." (Docket #28, ¶ 35).[6]

On or about December 2, 2011, Madden selected Brenda Kowalczyk (who is white, not African-American) for the position Lilley sought. (Docket #44, ¶ 89); (Docket #49, ¶ 5e).

2.4    2012 EEOC Charges

On or about May 9, 2012, Lilley filed charges of racial discrimination and retaliation with the EEOC (Case No. 443-2012-01054) relating to the 2011 promotion denial. (Docket #44, ¶ 124). On May 2, 2013, the EEOC issued Lilley a Notice of Right to Sue in respect of her charges. (Docket #6, ¶ 64); (Docket #8, ¶ 64).

---

[4] Lilley admits only that this is what occurred at the meeting.

[5] "While the titles were different, the same opening was being filled during both postings." (Docket #44, ¶ 78).

[6] Madden's justification, according to Lilley, is pretext.

2.5     2012 Deposition in Bernadine Matthews' Litigation

According to Lilley, the Waukesha County Human Resources Department contacted her "in mid-July of 2011" about a request that she be deposed in a racial discrimination case brought by Bernadine Matthews, a former employee, against Waukesha County. (Docket #41-4, 5).[7] Together with that department, Lilley agreed upon a date for the deposition. *See* (Docket #44, ¶ 127). Ultimately, Lilley's deposition in the Matthews case occurred on February 8, 2012. (*Id.* at ¶ 129).

3.     SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether a genuine dispute of material fact exists, the court must construe all reasonable inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

---

[7]In response to Lilley's declaration, Waukesha County highlights the imprecision with which Lilley details the timing of the interaction. (Docket #49, ¶ 63).

4. ANALYSIS

 4.1 Lilley's Racial Discrimination Claims

> Title VII prohibits employers from discriminating based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Section 1981 focuses on the right to be free of racial discrimination in the making and enforcing of contracts. As [the Seventh Circuit] ha[s] noted before, "the methods of proof and elements of [a Section 1981] case are essentially identical" to those in a Title VII case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009); *see also Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 649 (7th Cir. 2011).

*Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013).

To prevail under Title VII, a plaintiff must show three essential elements: (i) that she is a member of a class protected by the statute; (ii) that she has been the subject of some form of adverse employment action; and (iii) that her employer took this adverse action on account of her membership in the protected class. *Id.*

Here, it is undisputed that Lilley, an African-American, was denied a promotion in 2011. Therefore, the first two elements are not genuinely in dispute.

As for the third element, in particular, "[d]emonstrating that a plaintiff has enough evidence to survive summary judgment…has become a complex exercise." *Id.* (citations omitted).

A plaintiff's response to her employer's motion for summary judgment must identify initially whether the plaintiff is litigating her case under a "direct" method of proof, an "indirect" method of proof, or both. *Id.* Here, Lilley elects to proceed under both methods of proof. (Docket #35, 5).

> The real distinction between these two methods, however, is not whether one relies solely on "direct" evidence (in the sense of a smoking gun) and the other relies on circumstantial evidence. The labels have become terms of art.
>
> "Direct" proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus, *see, e.g., Smith v. Wilson*, 705 F.3d 674, 677 (7th Cir. 2013); *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011), and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action, see *Diaz*, 653 F.3d at 587.
>
> …
>
> Typical kinds of [circumstantial] evidence [] include "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." Diaz, 653 F.3d at 587.

*Morgan*, 724 F.3d at 995-996.

By contrast, "[t]he term 'indirect method' refers to a particular way of using circumstantial evidence at the summary judgment stage. It was pioneered by the Supreme Court 40 years ago in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." (*Id.* at 996).

In *McGowan v. Deere & Co.*, the Seventh Circuit applied the *McDonnell Douglas* burden-shifting framework to a plaintiff's Title VII and Section 1981 failure-to-promote claims:

> [The plaintiff] has to show that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for the applicable positions; (3) [s]he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If [the plaintiff] can make out a prima

> facie case on these four factors, the burden of production shifts to [the defendant] to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id.* If it can do so, the burden then shifts back to [the plaintiff] to show that the stated reason is merely a pretext for discrimination, i.e., a lie. *Id.* The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir.2007).

581 F.3d 575, 579 (7th Cir. 2009).

Here, rather than offer evidence *explicitly* linking Lilley's 2011 promotion denial to a discriminatory animus (*i.e.*, a "smoking gun"), Lilley relies solely on circumstantial evidence. *See* (Docket #35).

To summarize, Lilley proceeds under both the direct method's circumstantial branch and the indirect method (which, as noted above, is simply a particular way of using circumstantial evidence at the summary judgment stage).

At bottom, the indirect method of proving racial discrimination requires Lilley to show pretext. *McGowan*, 581 F.3d at 579. By contrast, under the direct method's circumstantial branch, evidence of pretext is not compartmentalized. *Morgan*, 724 F.3d at 995-996. Given that Lilley offers evidence to show pretext, the Court will first analyze Lilley's claim under the indirect method of proof.

### 4.1.1 Racial Discrimination: Indirect Method of Proof[8]

As noted above in Section 2.3, on July 26, 2011, Madden advised Lilley that Madden would not consider Lilley for the Civil Division Manager position because of: (i) Lilley's "clear lack of initiative to prepare herself for promotional opportunities" outside of the Criminal/Traffic Division; and (ii) Lilley's "several ongoing performance issues and personnel concerns" which included: (a) sending "inappropriate" e-mails on September 24, 2010, and June 29, 2011; (b) failing to complete subordinates' annual performance evaluations in a timely manner; and (c) doing homework "on County time and on County equipment." (Docket #28, ¶¶ 21-28); (Docket #44, pp. 26-27); Section 2.3, *supra*. Lilley seeks to portray Madden's nondiscriminatory explanations as pretext for prohibited animus.

> The focus of the pretext inquiry is whether the proffered reason is a lie. *Id.* That is, the question "is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland–Borg Corp.*, 453 F.3d 416, 417 (7th Cir.2006).

*Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002-1003 (7th Cir. 2013).

---

[8]Below, the Court finds that Lilley's evidentiary showing in support of pretext is too meager to defeat summary judgment. Therefore, the Court addresses only this essential (and final) step in the *McDonnnell Douglas* burden-shifting framework. *See generally*, *Collins v. American Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013) (Where "an employer has cited performance issues as the justification for its adverse action, the performance element of the prima facie case cannot be separated from the pretext inquiry." Therefore, a court "may appropriately begin with pretext.") (citations omitted).

With regard to initiative, Lilley argues that Madden was mistaken.[9] However, arguing about the accuracy of Madden's assessment "is a distraction in the pretext context; the fact that a statement is inaccurate does not mean that it is a deliberate lie." *Collins*, 715 F.3d at 1000 (citation omitted). "*[P]retext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.* This is because courts are not superpersonnel departments charged with determining best business practices." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (citations omitted) (emphasis added).

By the same token, Lilley does not argue that Madden was *aware* of the initiative efforts Lilley highlights. *See, e.g.*, (Docket #35, 13); (Docket #36, ¶ 2-3); (Docket #41-4, ¶¶ 4-5 and 8-10). This dearth of evidentiary citation is all the more impactful where, as here, Madden (as the Clerk of Court at the top of the administrative pyramid) was not Lilley's direct supervisor.[10]

With regard to the second half of Madden's nondiscriminatory explanation—Lilley's "several ongoing performance issues and personnel

---

[9]Lilley points to: (i) performance evaluations for years *2005 and 2009* generally commending Lilley's "Quality of Work/Initiative" (Docket #37-5, 3) and (Docket #44-1, 3); and (ii) Lilley's own declaration stating that she completed: (a) a bachelor's degree in 2005; (b) a master's degree whose "coursework was applicable to [her] employment with Waukesha County" *in 2012*; (c) a "certification of court management through the National Association of Court Management" in 2009; (d) *five particular days* of court-sponsored educational workshops and training; (e) "a Woman in Leadership Webinar and an Office Supply Approval Training"; as well as (f) miscellaneous volunteering "in the Waukesha County community." (Docket #35, 13); (Docket #36, ¶ 2-3); (Docket #41-4, ¶¶ 4-5 and 8-10).

[10]From February 2006 until her retirement in 2013, Diane Kelsner ("Kelsner") was the Chief Deputy Clerk of Circuit Court in the Criminal/Traffic Division and Alyce Lilley's immediate supervisor. (Docket #44, ¶ 9).

concerns" which included: (a) sending "inappropriate" e-mails on September 24, 2010, and June 29, 2011; (b) failing to complete subordinates' annual performance evaluations in a timely manner; and (c) doing homework "on County time and on County equipment." (Docket #28, ¶¶ 21-28); (Docket #44, pp. 26-27); Section 2.3, *supra*—Lilley offers three responses.

First, Lilley offers her "effective" and "greater than effective" performance ratings in evaluations for years 2009 (and *earlier*) as evidence that Madden could not have honestly believed (in July 2011) that Lilley committed transgressions *in 2010 and 2011.* (Docket #49, ¶ 2); (Docket #35, 19).[11]

Second, Lilley argues that her white counterparts systematically received better treatment with regard to discipline. (Docket #35, 6-7 and 10-

---

[11]The substance of the e-mails is not disputed; rather, Lilley denies "any inference" that her tone "was disrespectful or unprofessional." (Docket #44, ¶ 41). For example, Lilley's e-mail to her direct supervisor (Kelsner) at 1:51 p.m. on June 29, 2011 (approximately one month before Madden denied Lilley's application for the 2011 promotion) reads: "What is this kindergarten? I feel like I am two years old and can't be trusted to do anything. Do we need to talk about my performance? I made the changes and sent it to you for review, but will send to Kathy for her review and final approval. Thanks," (*Id.*). That e-mail elicited a rebuke from Kelsner, to which Lilley replied that her 1:51 p.m. e-mail was "just kidding with [Kelsner]" and intended to "joke with [her] a little bit." (*Id.*)

As for Lilley's alleged failure to complete subordinates' annual performance evaluations in a timely manner, Lilley offers only a bald denial in her opposition brief. (Docket #35, 10).

Finally, in response to Madden's testimony that Madden personally "investigated Ms. Lilley's personal drive and confirmed the saved homework" on Lilley's workplace computer (Docket #28, ¶ 28), Lilley points to Madden's admission that "there's some limited ability during breaks and lunch that allows [use of a work computer for personal reasons]." (Docket #49, ¶ 48). Notably, Lilley does not state that her personal use was limited to only breaks and lunches. *Id.*

12). For each category of transgression, Lilley cites examples of individuals who committed the same violation but were not reprimanded for it. (Docket #35, 10-12). Madden, however, explains that the *coincidence* of these several performance concerns prompted her to formally address such concerns with Lilley in 2011. (Docket #51, ¶ 15);(Docket #48, 5). Lilley cites no evidence of a white counterpart *coincidentally* committing the same (or similar) constellation of infractions. *See* (Docket #35, 10-12).

Third, Lilley's opposition brief claims—*without any citation to the evidentiary record*—that Lilley "was 'disciplined' *for the first time in her career* only after she applied for the 2011 promotion and this occurred at the same time that she was being told that she would not be considered for the promotion." (Docket #35, 6) (emphasis in original). Alas, Lilley's affidavit makes a more modest claim: that she was never discplined before by *Kelsner or Madden*. (Docket #41-4, ¶ 22). No wonder then, that Lilley offers no reply to an array of constructive criticism WCCS documented in some of Lilley's performance evaluations earlier during Lilley's tenure at WCCS when neither Kelsner nor Madden were supervising Lilley. *Compare* (Docket #48, 3) (*e.g.*, from 2000 to 2003 (Docket #51-15, #51-16, and #51-18), constructive criticism of Lilley included remarks (sometimes stated as "goals") about: acting as a team player, demeanor/temperament and timely completion of performance evaluations of subordinates) *with* (Docket #54-1). Moreover, Lilley's claims of "suspicious timing" are also undermined by Lilley's failure to impeach Madden's explanation that the *coincidence* of multiple performance concerns prompted Madden to formally address such concerns with Lilley in July 2011. *See* (Docket #35, 10-12); (Docket #51, ¶ 15); (Docket #48, 5).

With the benefit of the foregoing analysis and having considered the evidentiary record, the Court finds that the evidence Lilley cites to cast Madden's nondiscriminatory explanations for the 2011 promotion denial as pretext is simply too meager and thus unavailing to defeat summary judgment.

### 4.1.2 Racial Discrimination: Direct Method of Proof

Rather than offer evidence *explicitly* linking Lilley's 2011 promotion denial to a discriminatory animus (*i.e.*, a "smoking gun"), Lilley relies solely on circumstantial evidence. *See* (Docket #35); Section 4.1, *supra*. When discussing the "direct" method of proof's circumstantial branch, the "metaphor of a mosaic" is used frequently to capture "the commonsense notion that individual pieces of circumstantial evidence that do not, in and of themselves, conclusively point to discrimination might nevertheless be sufficient to allow a trier of fact to find discrimination when combined." *Morgan*, 724 F.3d at 995-996.

Accordingly, Lilley attempts to construct a mosaic of circumstantial evidence that would permit a trier of fact to infer that racial discrimination motivated her 2011 promotion denial. (Docket #35, 6). In addition to Lilley's pretext arguments, analyzed in Section 4.1.1 *supra*, Lilley contends that her white counterparts systematically received better treatment with regard to career advancement. (Docket #35, 7-10). As "background evidence" to support her contention, Lilley offers a number of instances in which she was denied a promotion or lateral transfer at WCCS (and a white candidate was selected instead) *prior to* Lilley's rejection in 2011 for the position of Civil Division Manager. (Docket #54-1); (Docket #35, 7-10). Assessing the relevance (if any) of Lilley's "background evidence" would require "mini-trial[s]" of

claims which Lilley has voluntarily dismissed from this case. *See generally* n.1, *supra*, and *Jackson v. City of Chicago*, 552 F.3d 619, 623-624 (7th Cir. 2009).[12]

With the benefit of the foregoing analyses—Lilley's pretext arguments (in Section 4.1.1) and career advancement claims (directly *supra*)—the Court is obliged to find that Lilley has failed to construct a mosaic of circumstantial evidence that would permit a trier of fact to infer that racial discrimination motivated her 2011 promotion denial.

### 4.2     Lilley's Retaliation Claims

> Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). "The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms…by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). Similarly, the Supreme Court has determined that § 1981, which prohibits racial discrimination in making and enforcing contracts, encompasses retaliation claims. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 128 S.Ct. 1951, 1954–55, 170 L.Ed.2d 864 (2008).

*Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citations omitted).

The Seventh Circuit applies the same elements to retaliation claims under Title VII and Section 1981. *Id.* However, the elements depend on which

---

[12]Apart from the foregoing analysis, it bears noting that Lilley offers no evidence *explicitly* linking these *prior* promotion (and lateral transfer) denials to a discriminatory animus by Waukesha County. *See* (Docket #35 and #36).

method(s) of proof—direct and/or indirect—a plaintiff pursues. *Northington v. H & M Intern.*, 712 F.3d 1062, 1065 (7th Cir. 2013). Here, Lilley elects to proceed under *both* the direct and indirect methods of proof. (Docket #35, 22-30).

> [U]nder the direct method, a plaintiff must show that she (1) engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two. *Kodl v. Bd. of Educ. Sch. Dist.* 45, 490 F.3d 558, 562 (7th Cir. 2007). Under the indirect method, a plaintiff must show that she (1) engaged in statutorily protected activity; (2) met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in a statutorily protected activity. *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008); *Kodl*, 490 F.3d at 562.

*Id.*

Satisfying all four elements under the indirect method, however, states only a prima facie case that gives rise to burden-shifting:

> Once a plaintiff establishes the prima facie case under the indirect method, the defendant must articulate a nondiscriminatory reason for its action; if he does, the burden remains with the plaintiff to demonstrate that the defendant's reason is pretextual. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007).

*Stephens*, 569 F.3d at 787.

Therefore, at bottom, the indirect method of proving retaliation requires Lilley to show pretext. *Id.* By contrast, under the direct method's circumstantial branch, evidence of pretext is not compartmentalized. *See Lambert v. Peri Formworks Systems, Inc.*, 723 F.3d 863, 869 (7th Cir. 2013). Given

that Lilley offers evidence to show pretext, the Court will first analyze Lilley's claim under the indirect method of proof.[13]

4.2.1   Retaliation: Indirect Method of Proof

To show pretext, Lilley essentially rehashes the arguments "analyzed in greater detail in [her] race discrimination analysis" (Docket #35, 27-30). Since the pretext question focuses on whether Madden honestly believed the nondiscriminatory explanations she offered for Lilley's 2011 promotion denial, the Court's analysis in Section 4.1.1 *supra* applies with equal force to Lilley's retaliation claims under Title VII and Section 1981. Therefore, the Court is once again obliged to conclude that at bottom the evidence Lilley cites to cast Madden's nondiscriminatory explanations for the 2011 promotion denial as pretext is simply too meager to defeat summary judgment.

4.2.2   Retaliation: Direct Method of Proof

Proceeding under the "direct" method of proof's circumstantial branch, Lilley again seeks to construct a convincing mosaic. (Docket #35, 20-

---

[13] With regard to statutorily protected activity, Lilley points to: (i) the ERD and EEOC charges she filed against Waukesha County (naming WCCS) in 2006 and 2007, *See* Section 2.2., *supra*; (ii) her participation in the investigation(s) thereof, *Id.*; and (iii) agreeing, in mid-July of 2011, to be deposed in a racial discrimination case brought by a former employee of Waukesha County, *see* Section 2.5, *supra*. (Docket #35, 23). However, there is scant evidence to suggest that Madden (the decisionmaker in Lilley's 2011 promotion denial) *knew* about Lilley's activities opposing workplace discrimination. *See, e.g.*, (Docket #49, ¶¶ 32, 63 and 64); (Docket #35, 24-25).

Below, Lilley's pretext arguments (under the "indirect" method of proof) and attempt to create a mosaic of circumstantial evidence to show causation (under the "direct" method of proof) are unavailing, so Lilley's retaliation claims fail on those grounds.

29). In addition to Lilley's pretext arguments, analyzed in Section 4.1.1 *supra*, Lilley emphasizes timing and custom.

First, Lilley emphasizes the temporal proximity between her most recent allegedly statutorily protected activity—*agreeing (in mid-July 2011)* to testify at a deposition (which ultimately occurred *in 2012*) in the case of an individual bringing claims of racial discrimination against Waukesha County (Docket #35, 25) and (Docket #36, 18)—and Lilley's 2011 promotion denial the same month. (Docket #35, 25-27). Lilley musters up only hearsay to suggest that Madden *knew* about Lilley's planned deposition (let alone the nature of the case or what Lilley would testify to). (Docket #44, ¶ 63) ("Both Madden and [the Human Resources representative] had knowledge of Lilley's deposition in the Bernadine Matthews' case because Kelsner told Lilley that they had discussed the matter and debated about whether Lilley had to use vacation time to cover her absence. (Exhibit K, Lilley 63:08-64:12)."). Therefore, Lilley's temporal proximity argument is unavailing.

Second, Lilley contends that her 2011 promotion denial deviated from Waukesha County's general policy of "support[ing] the concept of promoting employees." (Docket #40-5, 14-15); (Docket #36, ¶ 69); (Docket #35, 27). Such a nebulous policy statement adds precious little to Lilley's attempt to form a mosaic of circumstantial evidence.

With the benefit of the foregoing analyses—Lilley's pretext arguments (in Section 4.1.1) as well as timing and custom arguments (directly *supra*)—the Court is obliged to find that Lilley has failed to construct a mosaic of circumstantial evidence that would permit a trier of fact to infer a causal link between the activity Lilley claims is statutorily protected and the 2011 promotion denial.

5.  CONCLUSION

With the benefit of the foregoing analysis, the Court finds that Waukesha County is entitled to summary judgment on all of Lilley's claims.[14]

Accordingly,

IT IS ORDERED that plaintiff Alyce Lilley's motion for leave to file a surreply brief (Docket #54) be and the same is hereby GRANTED *nunc pro tunc*;

IT IS FURTHER ORDERED that defendant Waukesha County's motion for summary judgment (Docket #24) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that the parties' motions in limine (Docket #56 and #58) be and the same are hereby DENIED as moot.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of April, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[14] In so finding, the Court has considered the arguments Lilley sets forth in her surreply brief. (Docket #54-1).